TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CHELSEA NORELL (Cal. Bar No. 280831)
KATHY YU (Cal. Bar No. 268210)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2624
    Facsimile: (213) 894-0161
    E-mail:   chelsea.norell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-221-FMO-3 |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: October 7, 2021 |
| DAMON SMITH, | Hearing Time: 2:30 p.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Chelsea Norell and Kathy Yu hereby files its sentencing position for defendant Damon Smith ("defendant").

The government's filing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report ("PSR"), and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: September 20, 2021        Respectfully submitted,

                                        TRACY L. WILKISON
                                      Acting United States Attorney

                                      SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                                  /s/
                                      CHELSEA NORELL
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  BACKGROUND**

On April 29, 2021, defendant Damon Smith ("defendant") pled guilty to one count of conspiracy to distribute and possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(b) (Count One).  Count One carries a mandatory minimum sentence of 60 months imprisonment, followed by a mandatory four-year period of supervised release.

On August 27, 2021, the United States Probation Office filed its Presentence Investigation Report ("PSR"), in which it calculated a base offense level of 24 (based on the agreed-upon drug amount), a three-level role enhancement, and a three-point reduction for acceptance of responsibility, yielding a total offense level of 24. The Probation Office also determined that defendant falls within Criminal History Category II.  The resulting advisory Guidelines range is 60 to 71 months.  Pursuant to 21 U.S.C. § 841(b)(1)(b), the mandatory minimum sentence is 60 months.

Based on the 3553 factors, the government recommends a Guidelines sentence of 70 months, followed by a four-year period of supervised release, a $2,000 fine, and a mandatory special assessment of $100.

**II.  STATEMENT OF FACTS**

Defendant admitted the following facts in the plea agreement and at the change of plea hearing:

Beginning on a date unknown and continuing to on or about August 26, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and intentionally agreed with his indicted co-conspirators and others, to distribute

and to possess with intent to distribute heroin, a Schedule I narcotic drug controlled substance. As a member of the conspiracy, and in furtherance of its goals, defendant would arrange the transportation of controlled substances from Southern California to other locations in the United States, including Anchorage, Alaska, for further distribution.

In furtherance of this conspiracy, defendant and his co-conspirators committed at least the following overt acts:

- On or about February 4, 2016, using coded language in a series of telephone conversations, defendant and Co-Defendant #1 discussed using Co-Defendant #2 as a drug courier and coordinated a time when defendant would meet with Co-Defendant #2.
- On or about April 28, 2016, using coded language in a telephone conversation, defendant instructed Co-Defendant #3 to deliver a package of controlled substances to Co-Defendant #2 to transport on a commercial flight.
- On or about April 29, 2016, using coded language in a series of telephone conversations, defendant and Co-Defendant #3 discussed Co-Defendant #2's role as a drug courier for the organization.
- On or about April 29, 2016, after Co-Defendant #3 drove Co-Defendant #2 to Los Angeles International Airport ("LAX"), defendant and Co-Defendant #3 discussed in a coded telephone conversation that Co-Defendant #3 and Co-Defendant #2 had arrived at LAX.
- On or about April 29, 2016, at LAX, law enforcement seized from Co-Defendant #2 approximately 148.6 grams of heroin that defendant had instructed Co-Defendant #3 to deliver.

2

- On or about April 29, 2016, using coded language in a telephone conversation, defendant instructed Co-Defendant #3 to drive another female drug courier to the airport the following morning.

Over the course of his involvement in this conspiracy, it was reasonably foreseeable to defendant that he and his co-conspirators would distribute and possess with intent to distribute at least 148 grams of a mixture and substance containing a detectable amount of heroin.

### III.     SENTENCING GUIDELINES CALCULATION

The PSR calculates defendant's total offense level as 24. This offense level resulted from the following calculation: a base offense level of 24 based on defendant's admission that the offense involved at least 100 grams of heroin; a three-level enhancement for defendant's managerial role in the drug trafficking organization; and a three-point reduction for defendant's acceptance of responsibility. (PSR ¶¶ 30-39.)  Defendant is not safety-valve eligible.

In addition, the PSR determined that defendant has three criminal history points, resulting in a Criminal History category of II, with which the government concurs.  (PSR ¶¶ 49.)

### IV.  ANALYSIS OF THE SECTION 3553(a) FACTORS

The government submits that the 3553(a) factors, in particular, the nature and circumstances of the offense, defendant's personal history and characteristics, the need to promote respect for the law and deter future crimes, and the need to protect the community, warrant the requested 70-month sentence.

**A. The Seriousness of the Crime as Well as Defendant's Role Warrant the Requested Sentence**

The nature and circumstances of the offense and the need to reflect the seriousness of the offense justify the requested custodial sentence. Defendant was a manager and supervisor in a conspiracy to distribute dangerous, highly addictive drugs across the United States. As the Probation Office explained, defendant "exercised authority over others," including directing co-defendant Margus Gipson to deliver controlled substances to drug courier co-defendant Asia Williams for trafficking on a commercial aircraft. (PSR ¶ 34.) When co-defendant Williams was caught, defendant – undeterred – directed co-defendant Margus Gipson to drive another female courier to the airport to execute the plan. (Id.) Defendant further directed the operations of the organization by conferring with co-conspirator Miecha Gunn regarding the use of female couriers. (Id.)

Defendant directed the distribution of heroin, a lethal and highly addictive opioid that has ravaged communities throughout the country and claimed tens of thousands of lives every year. See Drug and Opioid-Involved Overdose Deaths – United States 2017-2018, available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6911a4.htm, last visited May 9, 2021 (of the 70,237 drug overdose deaths in the United States in 2017, approximately two thirds (47,6000) involved an opioid). Defendant contributed to that ravaging by proliferating heroin into remote areas like Alaska, where it is otherwise difficult to obtain and where traffickers can profit off the epidemic by charging hefty markups to opioid-addicted communities.

4

The nature and circumstances of this serious crime, as well as defendant's leadership role in the conspiracy, weigh in favor of a meaningful custodial sentence.

### B. Defendant's Nature and Characteristics Warrant the Requested Sentence

Defendant's criminal history spans two decades and includes multiple drug convictions that evidently did not deter defendant from taking a leadership role in this drug trafficking organization. Though defendant has only three criminal history points, his criminal career includes a long history of drug arrests and convictions, one of which included charges of gun use and violent conduct. His convictions include felony auto theft (PSR ¶ 43); receipt of stolen property (PSR ¶ 44); felony possession of morphine, which included charges for assault, possession of a stolen firearm, aiming/discharging a firearm, and having a loaded pistol and digital scale in the vehicle (PSR ¶ 45); felony possession of cocaine/heroin (PSR ¶ 46); felony possession/purchase for sale of narcotics, including charges of transportation of cocaine and PCP for sale (PSR ¶ 47); and fourth degree possession of a controlled substance, which arose from defendant's sale of cocaine in a controlled buy (PSR ¶ 48).

Defendant's prior convictions and light sentences clearly have not deterred him from a life of drug trafficking. Instead, they demonstrate the danger his poses to the public, his continued lack of respect for the law, and the need to impose a sentence that will deter future crimes.

While it is commendable that defendant has maintained lawful employment (PSR ¶¶ 77-80), unfortunately it has not deterred him from

5

managing a drug trafficking organization. According to the PSR, defendant is a business owner and was employed full-time during the instant offense. (PSR ¶¶ 78-79.) Notwithstanding this employment, defendant directed and participated in a drug trafficking conspiracy that generated thousands of dollars transporting heroin and cocaine across the country.

Nor has defendant been deterred by the support of his loving family. Defendant reports growing up "with no difficulties and indicated that his necessities were provided for." (PSR ¶ 61.) He further reports having good relationships and frequent communication with his father, his three siblings, his children, and his partner. (PSR ¶¶ 57-60.) Despite having a great support network, he chose an illegal profession where he profits from crimes that tear families and communities apart. (PSR ¶¶ 65, 43-48.)

The government recognizes defendant's alcohol and marijuana abuse issues and notes that the recommended custodial sentence will likely allow defendant to avail himself of the RDAP program, furthering the restorative and rehabilitative goals of sentencing. (PSR ¶¶ 70-73.)

On balance, the government submits that a custodial sentence of 70 months is sufficient but not greater than necessary to meet the goals of sentencing set forth in the 3553 factors.

**C. The Government Recommends a Fine of $2,000**

The Guidelines state that, "the court <u>shall</u> impose a fine in all cases, except where the defendant establishes that [he] is unable to pay and is not likely to become able to pay." U.S.S.G. § 5E1.2 (a) (emphasis added). Here, defendant cannot establish that he is unable to pay and is not likely to become able to pay, because he has a

monthly income of $3,500; stock that he transferred shortly after pleading guilty, worth $870 at the time of transfer; two automobiles that defendant did not report, one of which is worth $7,500; and of course, defendant's unreported and unknown income from drug trafficking. (PSR ¶¶ 81-82.)[1] Defendant's 2020 taxes show his adjusted gross income was $47,063. (PSR ¶ 85.) In short, defendant has not demonstrated an inability to pay a fine.

In determining the amount of the fine, the Court "shall consider" the following, among other things: "the need for the combined sentence to reflect the seriousness of the offense . . . to promote respect for the law, to provide just punishment, and to afford adequate deterrence"; "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of [her] earning capacity and financial resources"; and "the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed." (U.S.S.G. §§ 5E1.2(d); see also 18 U.S.C. § 3572(a).) As the Guidelines make clear, "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanction imposed, is punitive." (U.S.S.G. § 5E1.2(d).) Here, the Guidelines range for a fine against defendant is $30,000 to $5,000,000. (PSR ¶¶ 94-96.)

The government recommends a fine of $2,000 based on the facts of this case, as well as defendant's future ability to pay. Defendant is currently 38 years old and has both liquid and non-liquid assets

---

[1] Additionally, defendant's itemized monthly expenses do not account for his partner's income, as she presumably shares in these joint expenses.

7

that could go towards the fine. Furthermore, he has demonstrated that he can find and maintain employment. See United States v. Orlando, 553 F.3d 1235, 1240 (9th Cir. 2009) ("The defendant bears the burden of proving he is unable to pay the fine . . . However, the court may fine a currently indigent defendant, if it finds that he has earning capacity to pay the fine in the future.")).

Moreover, a fine, coupled with a custodial sentence, will be a powerful specific and general deterrent against those, including defendant, who seek to profit off the back of the opioid crisis. It will serve to disgorge defendant of a modest fraction of the proceeds he made in this illegal drug trafficking enterprise.

**V.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that defendant be sentenced as follows: (1) a 70-month term of imprisonment; (2) a four-year period of supervised release; and (3) a fine of $2,000; and (4) a special assessment of $100.